1

1          IN THE UNITED STATES DISTRICT COURT

2           IN AND FOR THE DISTRICT OF DELAWARE

3

iFIT INC.,                        )
4                                  )
    ------------------Plaintiff,  )
5                                  )Case No.
              vs.                  )20-CV-1386-RGA
6                                  )
PELOTON INTERACTIVE, INC.,         )
7                                  )
    ------------------Defendant.   )
8

9              TRANSCRIPT OF DISCOVERY DISPUTE

10

11            DISCOVERY DISPUTE had before the

12   Honorable Richard G. Andrews, U.S.D.C.J., on

13   the 20th of December, 2021, via Microsoft

14   Teams.

15

16                      APPEARANCES

17        RICHARDS, LAYTON & FINGER, P.A.
              BY: FREDERICK COTTRELL, III, ESQ.
18            CHRISTINE HAYNES, ESQ.

19                        -and-

20        FOLEY & LARDNER LLP
              BY: JEAN-PAUL CIARDULLO, ESQ.
21            ALEXIS JUERGENS, ESQ.
              RUBEN RODRIGUES, ESQ.
22
                           Counsel for Plaintiff
23

24

25

1

2              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                   BY: ANTHONY RAUCCI, ESQ.
3
                              -and-
4
               LATHAM & WATKINS LLP
5                  BY: GABRIEL GROSS, ESQ.
                   STEPHEN O'DONOHUE, ESQ.
6
                                    Counsel for Defendant
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE COURT:  Good morning.  This is

2    Judge Andrews in iFIT versus Peloton for Number

3    20-1386.  This is a discovery dispute brought

4    by Peloton.  Who represents Peloton?

5              MR. GROSS:  Good morning, Your Honor.

6    This is Gabe Gross with Latham and Watkins, and

7    I have a couple colleagues with me on the line.

8    Stephen O'Donohue, also from Latham and

9    Watkins, and Anthony Raucci in Wilmington is

10   with us also.

11             THE COURT:  All right.

12             MR. RAUCCI:  Good morning, Your

13   Honor.

14             THE COURT:  Good morning.  All right.

15       And who represents iFit?

16             MR. CIARDULLO:  Good morning, Your

17   Honor.  This is Jean-Paul Ciardullo from Foley

18   Lardner.  I'm beaming in from Los Angeles.

19   With me on the call are my colleagues Ruben

20   Rodrigues, Alexis Juergens, Christine Haynes,

21   and something is on my screen here.  I can't

22   see who else is on the line here.

23             MR. COTTRELL:  It's Fred Cottrell,

24   Your Honor.

25             THE COURT:  And I see my court

1    reporter on the line, and I see a deputy clerk

2    on the line.

3          So I read the letters.  I looked at the

4    interrogatories.  I don't think we need to

5    spend a lot of time on this.  Mr. Gross -- I

6    guess, actually, let me skip Mr. Gross.

7          Mr. Ciardullo, so on question number 16

8    or interrogatory number 16, it asks for, among

9    other things, the date of sale and post offer

10   for sale.  Is that information that you

11   provided for the accused -- the specifically

12   accused products?

13          MR. CIARDULLO:  We provided it for

14   the two products that we had known to be

15   accused, I guess, as of the time of these

16   letters.  If it's helpful, I can provide Your

17   Honor with something on an update.

18          THE COURT:  Okay.

19          MR. CIARDULLO:  As I understand it, I

20   think we're largely in agreement on this, and

21   I'll have to defer to Mr. Gross after my

22   comments, but I had a nice conversation with

23   Mr. Gross on Friday, and what we said is that

24   for any bikes out of our list that we

25   provided -- it was about 184 bikes in there --

1          among any of those that are affirmatively

2          accused of infringement, we'll provide the

3          balance of all of the sales data, so on top of

4          the data we already provided for the models we

5          understood to be accused of infringement.

6               Later on Friday, there was a supplement

7          to Peloton's interrogatory responses that

8          appears to do just that, to identify further

9          products in addition to a list that was

10         provided by Mr. Gross over e-mail, so I think

11         we're pretty close on having what we looked for

12         here, which was we just wanted an affirmative

13         identification of which of these bikes were

14         actually being accused of infringement so we

15         had that formally in the place in the record to

16         work from and we knew we weren't collecting

17         information about potentially irrelevant

18         products.

19               THE COURT:  So, Mr. Ciardullo, how

20         many bikes are now accused?

21               MR. CIARDULLO:  I didn't tally up the

22         number.  I would guess, just glancing at it,

23         that it was about maybe 25.  I didn't count it

24         up.

25               THE COURT:  Okay.  All right.  Any in

1          event, you're going to produce the --

2          supplement the interrogatory along the same

3          lines of what you have already provided.

4                  Well, I guess, actually, I'm not sure

5          what you have actually provided.  Hold on a

6          minute.

7                  So you're going to provide the financial

8          information, which would include the first date

9          of sale for these approximately 25 accused

10         bikes.  When are you going to do that by?

11                  MR. CIARDULLO:  I only honestly just

12         looked at this this morning, in terms of what

13         was there, and I'm personally just getting

14         familiar with this.  I'm going to confirm with

15         the client to confirm how readily accessible

16         the information is, and we'll be providing it,

17         certainly, as soon as possible.  With holidays,

18         it's sometimes hard to get ahold of people, but

19         I hesitate to give a firm answer just not

20         having confirmed with the client yet.  We only

21         just got that information on Friday.

22                  THE COURT:  Okay.  And one other

23         thing that was in interrogatory number 16 had

24         to do with documents that describe the

25         components of the design of the bike.  Have

1          they already been provided for the two accused

2          bikes to date?  Because I didn't really see

3          anything, necessarily, in the response that

4          looked like that part was acknowledged.

5                    MR. CIARDULLO:  So my understanding

6          of this is that we're looking for, sort of, the

7          design history, essentially, ultimately.  As

8          sort of collectively between interrogatories 14

9          and 16, they want to know how did the bikes

10         come into being, how did you design them, where

11         did the parts come from, why they look the way

12         they look.  And collectively as between --

13         whether it's in response to interrogatory 14 or

14         16, we will be providing that full information

15         for all the accused products.

16                    THE COURT:  Okay.  All right.

17              So, Mr. Gross, what do you have to say

18         about this?

19                    MR. GROSS:  Well, I can tell Your

20         Honor I'm cautiously encouraged by the

21         commitments we heard.  I regret that it took

22         filing a motion to get them from iFIT.  I can

23         put a little more precision on the number of

24         products that are at stake here if it's useful

25         for the Court.

1       THE COURT:  As long as you and

2  Mr. Ciardullo know how many products you're

3  talking about or which products you're talking

4  about, whether it's, you know, 20 or 30 doesn't

5  make any difference to me.  So I think what I

6  heard Mr. Ciardullo say is for whatever these

7  products are, they are going to produce the

8  design history and the financial data that

9  you've requested, and I guess I'm wondering,

10  assuming they do that, are we -- is this now

11  resolved?

12       MR. GROSS:  It may be, Your Honor.

13  It just sounds like commitments we heard before

14  we had to file the motion that didn't resolve

15  it.  As long as the responses are fully

16  responsive and that, in going through the

17  origin of the trade press on what happened to

18  be about 58 products -- three brands, 13

19  products with about 58 different versions -- as

20  long as they provide the full information about

21  the design and development of those, including

22  explaining what we've seen as evidence from the

23  top to emulate Peloton's products, that will be

24  fine.

25       THE COURT:  Mr. Gross, you know,

1    that's -- that's something that is best done by

2    deposition.  Basically, you're trying to get

3    minute details about one particular thing that

4    probably resists actually doing that.

5              So they told you who the engineers --

6    they've identified the people who, at least for

7    the ProForm bikes, were in charge of things.

8    Maybe there will be different people for some

9    of these other bikes.  I don't know, but I'm

10   not going to be directing someone to give

11   "full" responses because that's just a

12   subjective standard.

13             And so based on what I've heard, I would

14   like Mr. Ciardullo to consult with his client

15   and provide you with a date by which he will

16   provide information he's discussed.

17             And, Mr. Ciardullo, I do understand where

18   we are in the calendar year.  Do you think you

19   can talk with your client before the end of

20   this week?

21             MR. CIARDULLO:  Certainly.  I happen

22   to have a deposition I'm taking right after

23   this call, but I was going to try to set things

24   in motion to connect after that.  Hopefully, I

25   can talk with folks this week to determine how

1    much time will be involved.  I guess it's 58

2    products collecting information, and we'll

3    provide that as soon as we're able to provide

4    it.

5              THE COURT:  And so, you know, when I

6    do these things to try to minimize the

7    possibility that you will come back later or

8    they will come back later, I would like you,

9    when you talk to your client this week, to give

10   a reasonable estimate as to when you're going

11   to produce these, essentially, documents and, I

12   guess, update the interrogatories, to the

13   extent the interrogatories need to be updated

14   in conjunction with the production of the

15   documents.  I understand you can't give a date

16   right now, but I'd like you to get them a date

17   that you intend to meet before the end of the

18   week.

19             MR. CIARDULLO:  Of course.  That's

20   fine.

21             THE COURT:  All right.  So unless

22   there's something I'm missing, I think we're

23   done.

24             MR. GROSS:  Thank you, Your Honor.

25   We appreciate the Court's time and assistance

1       with this.

2                       THE COURT:  All right.  Well, then,

3       the -- to the extent -- I've been given very

4       little directive here, but the one directive I

5       have given is in the transcript and should

6       there be any question about it, the directive

7       in the transcript will serve as the order of

8       the Court here.

9            Thank you to, really, both sides for

10      cutting out some of the unnecessary dispute

11      here and doing what I think probably should

12      have been done in the first place, which is

13      Peloton says "Here's the accused products" and

14      you go from there.  In any event, you worked it

15      out mostly between yourselves, and I do

16      appreciate that.

17           Everyone have -- hopefully, you all get

18      some time off in the near future and have a

19      good rest of the year, and when the next thing

20      comes up, I guess you should contact me.  I'm

21      going to hang up now.  Thank you very much.

22      Good-bye.

23

24

25

```
 1                   C E R T I F I C A T E

 2     STATE OF DELAWARE          )
                                  ) ss:
 3     COUNTY OF NEW CASTLE       )

 4            I, Deanna L. Warner, a Certified

 5     Shorthand Reporter, do hereby certify that as

 6     such Certified Shorthand Reporter, I was

 7     present at and reported in Stenotype shorthand

 8     the above and foregoing proceedings in Case

 9     Number 20-CV-1386-RGA, iFIT INC. Vs. PELOTON

10     INTERACTIVE, INC., heard on December 20, 2021.

11            I further certify that a transcript of

12     my shorthand notes was typed and that the

13     foregoing transcript, consisting of 12

14     typewritten pages, is a true copy of said

15     DISCOVERY DISPUTE.

16            SIGNED, OFFICIALLY SEALED, and FILED

17     with the Clerk of the District Court, NEW

18     CASTLE County, Delaware, this 29th day of

19     December, 2021.

20
                        _____
21
                        Deanna L. Warner, CSR, #1687
22                      Speedbudget Enterprises, LLC

23

24

25
```

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, DE 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

**#**

**#1687** [1] - 12:21

**1**

**12** [1] - 12:13
**13** [1] - 8:18
**14** [2] - 7:8, 7:13
**16** [5] - 4:7, 4:8, 6:23, 7:9, 7:14
**184** [1] - 4:25

**2**

**20** [2] - 8:4, 12:10
**20-1386** [1] - 3:3
**20-CV-1386-RGA** [2] - 1:5, 12:9
**2021** [3] - 1:13, 12:10, 12:19
**20th** [1] - 1:13
**25** [2] - 5:23, 6:9
**29th** [1] - 12:18

**3**

**30** [1] - 8:4

**5**

**58** [3] - 8:18, 8:19, 10:1

**A**

**able** [1] - 10:3
**accessible** [1] - 6:15
**accused** [11] - 4:11, 4:12, 4:15, 5:2, 5:5, 5:14, 5:20, 6:9, 7:1, 7:15, 11:13
**acknowledged** [1] - 7:4
**addition** [1] - 5:9
**affirmatively** [1] - 5:1
**agreement** [1] - 4:20
**ahold** [1] - 6:18
**ALEXIS** [1] - 1:21
**Alexis** [1] - 3:20
**AND** [1] - 1:2
**Andrews** [2] - 1:12, 3:2
**Angeles** [1] - 3:18
**answer** [1] - 6:19
**Anthony** [1] - 3:9

**ANTHONY** [1] - 2:2
**APPEARANCES** [1] - 1:16
**appreciate** [2] - 10:25, 11:16
**ARSHT** [1] - 2:2
**assistance** [1] - 10:25
**assuming** [1] - 8:10

**B**

**balance** [1] - 5:3
**based** [1] - 9:13
**beaming** [1] - 3:18
**best** [1] - 9:1
**between** [3] - 7:8, 7:12, 11:15
**bike** [1] - 6:25
**bikes** [9] - 4:24, 4:25, 5:13, 5:20, 6:10, 7:2, 7:9, 9:7, 9:9
**brands** [1] - 8:18
**brought** [1] - 3:3
**BY** [1] - 1:17
**bye** [1] - 11:22

**C**

**calendar** [1] - 9:18
**Case** [2] - 1:5, 12:8
**CASTLE** [2] - 12:3, 12:18
**cautiously** [1] - 7:20
**certainly** [2] - 6:17, 9:21
**Certified** [2] - 12:4, 12:6
**certify** [2] - 12:5, 12:11
**charge** [1] - 9:7
**Christine** [1] - 3:20
**CHRISTINE** [1] - 1:18
**Ciardullo** [7] - 3:17, 4:7, 5:19, 8:2, 8:6, 9:14, 9:17
**CIARDULLO** [9] - 1:20, 3:16, 4:13, 4:19, 5:21, 6:11, 7:5, 9:21, 10:19
**Clerk** [1] - 12:17
**clerk** [1] - 4:1
**client** [5] - 6:15, 6:20, 9:14, 9:19, 10:9
**close** [1] - 5:11
**colleagues** [2] - 3:7, 3:19
**collecting** [2] - 5:16, 10:2

**collectively** [2] - 7:8, 7:12
**comments** [1] - 4:22
**commitments** [2] - 7:21, 8:13
**components** [1] - 6:25
**confirm** [2] - 6:14, 6:15
**confirmed** [1] - 6:20
**conjunction** [1] - 10:14
**connect** [1] - 9:24
**consisting** [1] - 12:13
**consult** [1] - 9:14
**contact** [1] - 11:20
**conversation** [1] - 4:22
**copy** [1] - 12:14
**Cottrell** [1] - 3:23
**COTTRELL** [2] - 1:17, 3:23
**Counsel** [1] - 2:6
**counsel** [1] - 1:22
**count** [1] - 5:23
**COUNTY** [1] - 12:3
**County** [1] - 12:18
**couple** [1] - 3:7
**course** [1] - 10:19
**Court** [3] - 7:25, 11:8, 12:17
**COURT** [15] - 1:1, 3:1, 3:11, 3:14, 3:25, 4:18, 5:19, 5:25, 6:22, 7:16, 8:1, 8:25, 10:5, 10:21, 11:2
**court** [1] - 3:25
**Court's** [1] - 10:25
**CSR** [1] - 12:21
**cutting** [1] - 11:10

**D**

**data** [3] - 5:3, 5:4, 8:8
**date** [6] - 4:9, 6:8, 7:2, 9:15, 10:15, 10:16
**Deanna** [2] - 12:4, 12:21
**December** [3] - 1:13, 12:10, 12:19
**Defendant** [2] - 1:7, 2:6
**defer** [1] - 4:21
**DELAWARE** [2] - 1:2, 12:2
**Delaware** [1] - 12:18
**deposition** [2] - 9:2, 9:22
**deputy** [1] - 4:1
**describe** [1] - 6:24

**design** [5] - 6:25, 7:7, 7:10, 8:8, 8:21
**details** [1] - 9:3
**determine** [1] - 9:25
**development** [1] - 8:21
**difference** [1] - 8:5
**different** [2] - 8:19, 9:8
**directing** [1] - 9:10
**directive** [3] - 11:4, 11:6
**discovery** [1] - 3:3
**DISCOVERY** [3] - 1:9, 1:11, 12:15
**discussed** [1] - 9:16
**dispute** [2] - 3:3, 11:10
**DISPUTE** [3] - 1:9, 1:11, 12:15
**District** [1] - 12:17
**DISTRICT** [2] - 1:1, 1:2
**documents** [3] - 6:24, 10:11, 10:15
**done** [3] - 9:1, 10:23, 11:12

**E**

**e-mail** [1] - 5:10
**emulate** [1] - 8:23
**encouraged** [1] - 7:20
**end** [2] - 9:19, 10:17
**engineers** [1] - 9:5
**Enterprises** [1] - 12:22
**ESQ** [8] - 1:17, 1:18, 1:20, 1:21, 1:21, 2:2, 2:5, 2:5
**essentially** [2] - 7:7, 10:11
**estimate** [1] - 10:10
**event** [2] - 6:1, 11:14
**evidence** [1] - 8:22
**explaining** [1] - 8:22
**extent** [2] - 10:13, 11:3

**F**

**familiar** [1] - 6:14
**file** [1] - 8:14
**FILED** [1] - 12:16
**filing** [1] - 7:22
**financial** [2] - 6:7, 8:8
**fine** [2] - 8:24, 10:20
**FINGER** [1] - 1:17
**firm** [1] - 6:19
**first** [2] - 6:8, 11:12

**FOLEY** [1] - 1:20
**Foley** [1] - 3:17
**folks** [1] - 9:25
**FOR** [1] - 1:2
**foregoing** [2] - 12:8, 12:13
**formally** [1] - 5:15
**Fred** [1] - 3:23
**FREDERICK** [1] - 1:17
**Friday** [3] - 4:23, 5:6, 6:21
**full** [3] - 7:14, 8:20, 9:11
**fully** [1] - 8:15
**future** [1] - 11:18

**G**

**Gabe** [1] - 3:6
**GABRIEL** [1] - 2:5
**given** [2] - 11:3, 11:5
**glancing** [1] - 5:22
**good-bye** [1] - 11:22
**GROSS** [5] - 2:5, 3:5, 7:19, 8:12, 10:24
**gross** [1] - 3:6
**Gross** [7] - 4:5, 4:6, 4:21, 4:23, 5:10, 7:17, 8:25
**guess** [8] - 4:6, 4:15, 5:22, 6:4, 8:9, 10:1, 10:12, 11:20

**H**

**hang** [1] - 11:21
**hard** [1] - 6:18
**HAYNES** [1] - 1:18
**Haynes** [1] - 3:20
**heard** [5] - 7:21, 8:6, 8:13, 9:13, 12:10
**helpful** [1] - 4:16
**hereby** [1] - 12:5
**hesitate** [1] - 6:19
**history** [2] - 7:7, 8:8
**hold** [1] - 6:5
**holidays** [1] - 6:17
**honestly** [1] - 6:11
**Honor** [8] - 3:5, 3:13, 3:17, 3:24, 4:17, 7:20, 8:12, 10:24
**Honorable** [1] - 1:12
**hopefully** [2] - 9:24, 11:17

**I**

**identification** [1] -

5:13
**identified** [1] - 9:6
**identify** [1] - 5:8
**iFit** [5] - 1:3, 3:2, 3:15, 7:22, 12:9
**III** [1] - 1:17
**IN** [2] - 1:1, 1:2
**INC** [4] - 1:3, 1:6, 12:9, 12:10
**include** [1] - 6:8
**including** [1] - 8:21
**information** [9] - 4:10, 5:17, 6:8, 6:16, 6:21, 7:14, 8:20, 9:16, 10:2
**infringement** [3] - 5:2, 5:5, 5:14
**intend** [1] - 10:17
**INTERACTIVE** [2] - 1:6, 12:10
**interrogatories** [4] - 4:4, 7:8, 10:12, 10:13
**interrogatory** [5] - 4:8, 5:7, 6:2, 6:23, 7:13
**involved** [1] - 10:1
**irrelevant** [1] - 5:17

**J**

**Jean** [1] - 3:17
**JEAN** [1] - 1:20
**Jean-Paul** [1] - 3:17
**JEAN-PAUL** [1] - 1:20
**Judge** [1] - 3:2
**JUERGENS** [1] - 1:21
**Juergens** [1] - 3:20

**K**

**known** [1] - 4:14

**L**

**Lardner** [1] - 3:18
**LARDNER** [1] - 1:20
**largely** [1] - 4:20
**LATHAM** [1] - 2:4
**Latham** [2] - 3:6, 3:8
**LAYTON** [1] - 1:17
**least** [1] - 9:6
**letters** [2] - 4:3, 4:16
**line** [4] - 3:7, 3:22, 4:1, 4:2
**lines** [1] - 6:3
**list** [2] - 4:24, 5:9
**LLC** [1] - 12:22
**LLP** [3] - 1:20, 2:2, 2:4

**look** [2] - 7:11, 7:12
**looked** [4] - 4:3, 5:11, 6:12, 7:4
**looking** [1] - 7:6
**Los** [1] - 3:18

**M**

**mail** [1] - 5:10
**meet** [1] - 10:17
**Microsoft** [1] - 1:13
**minimize** [1] - 10:6
**minute** [2] - 6:6, 9:3
**missing** [1] - 10:22
**models** [1] - 5:4
**morning** [6] - 3:1, 3:5, 3:12, 3:14, 3:16, 6:12
**MORRIS** [1] - 2:2
**mostly** [1] - 11:15
**motion** [3] - 7:22, 8:14, 9:24
**MR** [14] - 3:5, 3:12, 3:16, 3:23, 4:13, 4:19, 5:21, 6:11, 7:5, 7:19, 8:12, 9:21, 10:19, 10:24

**N**

**near** [1] - 11:18
**necessarily** [1] - 7:3
**need** [2] - 4:4, 10:13
**NEW** [2] - 12:3, 12:17
**next** [1] - 11:19
**nice** [1] - 4:22
**NICHOLS** [1] - 2:2
**notes** [1] - 12:12
**number** [6] - 3:2, 4:7, 4:8, 5:22, 6:23, 7:23
**Number** [1] - 12:9

**O**

**O'DONOHUE** [1] - 2:5
**O'Donohue** [1] - 3:8
**OF** [4] - 1:2, 1:9, 12:2, 12:3
**offer** [1] - 4:9
**OFFICIALLY** [1] - 12:16
**one** [3] - 6:22, 9:3, 11:4
**order** [1] - 11:7
**origin** [1] - 8:17

**P**

**P.A** [1] - 1:17
**pages** [1] - 12:14
**part** [1] - 7:4
**particular** [1] - 9:3
**parts** [1] - 7:11
**Paul** [1] - 3:17
**PAUL** [1] - 1:20
**Peloton** [4] - 3:2, 3:4, 11:13
**PELOTON** [2] - 1:6, 12:9
**Peloton's** [2] - 5:7, 8:23
**people** [3] - 6:18, 9:6, 9:8
**personally** [1] - 6:13
**place** [2] - 5:15, 11:12
**Plaintiff** [2] - 1:4, 1:22
**possibility** [1] - 10:7
**possible** [1] - 6:17
**post** [1] - 4:9
**potentially** [1] - 5:17
**precision** [1] - 7:23
**present** [1] - 12:7
**press** [1] - 8:17
**pretty** [1] - 5:11
**proceedings** [1] - 12:8
**produce** [3] - 6:1, 8:7, 10:11
**production** [1] - 10:14
**products** [14] - 4:12, 4:14, 5:9, 5:18, 7:15, 7:24, 8:2, 8:3, 8:7, 8:18, 8:19, 8:23, 10:2, 11:13
**proform** [1] - 9:7
**provide** [8] - 4:16, 5:2, 6:7, 8:20, 9:15, 9:16, 10:3
**provided** [8] - 4:11, 4:13, 4:25, 5:4, 5:10, 6:3, 6:5, 7:1
**providing** [2] - 6:16, 7:14
**put** [1] - 7:23

**R**

**Raucci** [1] - 3:9
**RAUCCI** [2] - 2:2, 3:12
**read** [1] - 4:3
**readily** [1] - 6:15
**really** [2] - 7:2, 11:9
**reasonable** [1] - 10:10
**record** [1] - 5:15
**regret** [1] - 7:21

**reported** [1] - 12:7
**reporter** [1] - 4:1
**Reporter** [2] - 12:5, 12:6
**represents** [2] - 3:4, 3:15
**requested** [1] - 8:9
**resists** [1] - 9:4
**resolve** [1] - 8:14
**resolved** [1] - 8:11
**response** [2] - 7:3, 7:13
**responses** [3] - 5:7, 8:15, 9:11
**responsive** [1] - 8:16
**rest** [1] - 11:19
**Richard** [1] - 1:12
**RICHARDS** [1] - 1:17
**Rodrigues** [1] - 3:20
**RODRIGUES** [1] - 1:21
**Ruben** [1] - 3:19
**RUBEN** [1] - 1:21

**S**

**sale** [3] - 4:9, 4:10, 6:9
**sales** [1] - 5:3
**screen** [1] - 3:21
**SEALED** [1] - 12:16
**see** [4] - 3:22, 3:25, 4:1, 7:2
**serve** [1] - 11:7
**set** [1] - 9:23
**Shorthand** [2] - 12:5, 12:6
**shorthand** [2] - 12:7, 12:12
**sides** [1] - 11:9
**SIGNED** [1] - 12:16
**skip** [1] - 4:6
**someone** [1] - 9:10
**sometimes** [1] - 6:18
**soon** [2] - 6:17, 10:3
**sort** [2] - 7:6, 7:8
**sounds** [1] - 8:13
**specifically** [1] - 4:11
**Speedbudget** [1] - 12:22
**spend** [1] - 4:5
**ss** [1] - 12:2
**stake** [1] - 7:24
**standard** [1] - 9:12
**STATE** [1] - 12:2
**STATES** [1] - 1:1
**Stenotype** [1] - 12:7
**STEPHEN** [1] - 2:5
**Stephen** [1] - 3:8
**subjective** [1] - 9:12

**supplement** [2] - 5:6, 6:2

**T**

**tally** [1] - 5:21
**Teams** [1] - 1:14
**terms** [1] - 6:12
**THE** [16] - 1:1, 1:2, 3:1, 3:11, 3:14, 3:25, 4:18, 5:19, 5:25, 6:22, 7:16, 8:1, 8:25, 10:5, 10:21, 11:2
**they've** [1] - 9:6
**three** [1] - 8:18
**took** [1] - 7:21
**top** [2] - 5:3, 8:23
**trade** [1] - 8:17
**transcript** [4] - 11:5, 11:7, 12:11, 12:13
**TRANSCRIPT** [1] - 1:9
**true** [1] - 12:14
**try** [2] - 9:23, 10:6
**trying** [1] - 9:2
**TUNNELL** [1] - 2:2
**two** [2] - 4:14, 7:1
**typed** [1] - 12:12
**typewritten** [1] - 12:14

**U**

**U.S.D.C.J** [1] - 1:12
**ultimately** [1] - 7:7
**understood** [1] - 5:5
**UNITED** [1] - 1:1
**unless** [1] - 10:21
**unnecessary** [1] - 11:10
**up** [4] - 5:21, 5:24, 11:20, 11:21
**update** [2] - 4:17, 10:12
**updated** [1] - 10:13
**useful** [1] - 7:24

**V**

**versions** [1] - 8:19
**versus** [1] - 3:2
**via** [1] - 1:13
**vs** [2] - 1:5, 12:9

**W**

**warner** [1] - 12:4
**Warner** [1] - 12:21
**WATKINS** [1] - 2:4

**Watkins** [2] - 3:6, 3:9
**week** [4] - 9:20, 9:25, 10:9, 10:18
**Wilmington** [1] - 3:9
**wondering** [1] - 8:9

## Y

**year** [2] - 9:18, 11:19
**yourselves** [1] - 11:15